IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JASON WADE GREEN,	No. 3:16-cv-00838-HZ

        Plaintiff,	OPINION & ORDER

   v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.


Donald V. Reeder
Glenn, Reeder, Gassner & Carl, LLP
205 SE 5th Street
Madras, OR 97741

   Attorney for Plaintiff

Billy J. Williams
Janice E. Hebert
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Thomas M. Elsberry
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Jason Green brings this action for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). Because the Commissioner's decision was supported by substantial evidence and free of legal error, it is affirmed.

## BACKGROUND

Plaintiff was born on June 1, 1972, and was forty years old at his alleged disability onset date. Tr. 21.[1] Plaintiff has a high school education. *Id.* He has past relevant work as a grounds keeper, commercial/industrial cleaner, and lubrication servicer. *Id.* Plaintiff filed his application for DIB on September 6, 2012, alleging an onset date of August 1, 2012. Tr. 13. His application was initially denied on December 21, 2012, and upon reconsideration on April 15, 2013. *Id.* A hearing was held before Administrative Law Judge ("ALJ") John Michaelsen on July 9, 2014. Tr. 29. ALJ Michaelsen issued a written opinion denying Plaintiff's application on September 17, 2014. Tr. 13–23. The Appeals Council denied Plaintiff's request for review, making the ALJ's opinion the Commissioner's final decision that Plaintiff now challenges in this court. Tr. 1–7.

//

//

---

[1] Citations to "Tr." refer to pages of the administrative record transcript, filed here as ECF 8.

# SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at

141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured status requirement through June 30, 2017, and had not engaged in SGA since the alleged onset date. Tr. 15.

At step two, the ALJ found that Plaintiff had the following severe impairments: attention deficit disorder and bipolar disorder. Tr. 16. The ALJ considered other alleged conditions, including an injury to Plaintiff's right wrist, and concluded that they were non-severe. *Id.*

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments. *Id.*

The ALJ formulated the following RFC, finding that Plaintiff could perform a "full range of work at all exertional levels and the [RFC] to perform simple, repetitive, routine tasks requiring no more than occasional interaction with supervisors, no contact with the general public, and at most, brief infrequent contact with coworkers." Tr. 17.

At step four, the ALJ found that Plaintiff could not perform past relevant work as a grounds keeper, commercial/industrial cleaner, and lubrication servicer. Tr. 21.

At step five, the ALJ found that Plaintiff could perform the requirements of occupations such as: hand packager, sweeper/cleaner, and warehouse worker. Tr. 22. Accordingly, the ALJ concluded that Plaintiff was not disabled. Tr. 23.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in

the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff makes two challenges to the ALJ's findings. First, he argues that the ALJ erred at step two by finding that his right wrist pain was not a severe impairment. Second, Plaintiff argues that the ALJ erred by discounting the opinions of two medical providers, William Herz, M.D., his treating psychiatrist and Michelle Whitehead, Ph.D., a consultative psychologist.

**I.  Plaintiff's Right Wrist Pain**

On March 5, 2013, Plaintiff was involved in a car accident that caused a serious injury to his right wrist. Tr. 439. The ALJ found that any impairment stemming from Plaintiff's right wrist injury was non-severe. Tr. 16. Plaintiff challenges that finding, arguing that his RFC was insufficiently formulated because the ALJ failed to account for Plaintiff's right wrist limitations. By extension, Plaintiff further argues that the ALJ did not pose a hypothetical to the VE including Plaintiff's right wrist limitations. At step two, the plaintiff bears the burden of establishing that a medically determinable impairment is severe, such that it "significantly limits

the [plaintiff's] ability to do basic work activities." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it is merely a 'slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.ed 683, 686 (9th Cir. 2005) (quoting SSR 96-3p). Basic work activities include, in relevant part, physical actions such as "lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. §§ 404.1521(b), 416.921(b). Further, the plaintiff must demonstrate that the severe impairment has lasted or can be expected to last for at least twelve months. 20 C.F.R. §§ 404.1509, 416.909, 404.1520, 416.920. This is referred to as the durational requirement.

The step two inquiry is a "*de minimis*" screening device used to dispose of groundless claims. *Yuckert*, 482 U.S. at 153–54. A plaintiff may satisfy step two's severity requirement through "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. § 404.1508. A plaintiff's own statements of symptoms alone are insufficient. *Id.*

Plaintiff contends that his right wrist injury caused fragments of his wrist bone to float in his body as well as carpel tunnel. Pl. Br. at 4–5. To show that his alleged impairment satisfies the durational requirement, Plaintiff points to his visit with Dr. Katrina Perry that occurred on June 2, 2014, more than a year after the accident. Tr. 428. Plaintiff reported to Dr. Perry that his wrist still "hurts and gives [him] problems." Tr. 428. In Plaintiff's view, this statement taken with his use of a brace supports the inference that his right wrist impairment lasted longer than twelve months.

The ALJ found that Plaintiff's right wrist impairment was non-severe because it was not supported by medical evidence in the records and because Plaintiff failed to demonstrate that it satisfied the durational requirement. An x-ray of Plaintiff's right wrist showed a "small avulsion

fracture of the dorsal distal radial articular surface and medial radial articular surface, as well as, a minimally displaced ulnar styloid fracture." Tr. 16, 435–36. The ALJ also found that: X-rays taken in 2014 "did not show sign[s] of worsening;" Plaintiff "had positive Phalen's and Tinel's signs" and that "[t]here was diffuse tenderness of the wrist, but no swelling or deformity." Tr. 16, 430. Moreover, the ALJ also noted that Plaintiff did not make any subsequent complaints related to his right wrist until his June 2014 meeting with Dr. Perry, more than a year after the accident. Tr. 16. The ALJ found that these lapses in time regarding complaints and treatment strongly suggested that the condition did not result in any severe impairment. *Id.* The ALJ concluded that, "given the meager clinical development of these conditions during the relevant period at issue[,]" Plaintiff's right wrist condition was non-severe. *Id.* This conclusion was further reinforced by the medical opinions of the State agency's reviewing medical consultants Drs. Neal Berner and Martin Lahr. Tr. 16, 65–74, 77–87.

While the step two inquiry may be "*de minimis*," the Court must affirm the ALJ's finding that Plaintiff's right wrist impairment was non-severe. Based on the year-long lapse in time between the accident and Plaintiff's subsequent complaints, it was reasonable for the ALJ to conclude that Plaintiff's claimed impairment did not satisfy the durational requirement. The Court also finds that the ALJ's determination was supported by substantial evidence in the record. Objective medical evidence showed that Plaintiff's right wrist condition had no more than a minimal effect on his ability to perform work activities. Medical imaging showing minimal abnormalities and the lack of clinical documentation of an impairment constitute "relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's conclusion. *Vasquez*, 572 F.3d at 591.

//

## II. Medical Opinions

Next, Plaintiff challenges the ALJ's treatment of the opinions of Drs. Whitehead and Herz regarding Plaintiff's ADD and bipolar disorder. In social security cases, there are three types of medical opinions that courts accord different weight. *Valentine*, 574 F.3d at 692. Generally, more weight is given to the opinion of a treating source than to an examining source and more weight is given to the opinion of an examining source than to a non-examining source. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996). Where the treating or examining doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing reasons." *Id.* at 830. If the opinion is contradicted, the ALJ must provide "specific and legitimate reasons" for rejecting it. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quotation and citation omitted). Specific and legitimate reasons for rejecting a treating physician's opinion include its reliance on a claimant's discredited subjective complaints or its inconsistency with the medical records, a physician's own treatment notes, or a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### A. Dr. Herz

Plaintiff challenges the ALJ's rejection of the opinion of Dr. Herz, a mental health provider and treating source. Dr. Herz's opinion is contradicted by the medical opinions of Drs. Joshua Boyd and Kordell Kennemer. Tr. 21, 71–72, 84–86. Accordingly, the ALJ must provide specific and legitimate reasons based on substantial evidence in the record to reject Dr. Herz's opinion. *Valentine*, 574 F.3d at 692. On September 17, 2013, Dr. Herz opined that Plaintiff's

bipolar disorder and ADD caused marked limitations in social functioning and in his abilities to: maintain concentration for extended periods; perform activities within a schedule; coordinate and work closely with others; interact with the general public; accept instructions and criticism; and to get along with coworkers and peers without distracting them or exhibiting behavioral extremes. Tr. 424–27. In a letter dated January 8, 2014, Dr. Herz responded to Plaintiff's counsel's request for information. Tr. 335. In that letter, Dr. Herz stated that he had not seen Plaintiff since August 21, 2013. *Id.* He explained:

> The best that I can tell you is that it is highly likely he would have been impaired from doing any work for more than a year after August 2, 2012, and it is unlikely that he would have improved that significantly when I last saw him on August 21, 2013. I cannot vouch for his level of functioning after that time, however.

*Id.* In a subsequent letter dated July 15, 2014, Dr. Herz responded to Plaintiff's inquiry regarding "possible causes of [Plaintiff's] deterioration as of August 1, 2012 to the point that he could no longer work." Tr. 412. Dr. Herz stated that he had no contact with plaintiff since August 2013, nor did he have access to Plaintiff's old medical records. *Id.* He also wrote that:

> [I]n the several months prior to his losing his job at Warm Springs that [Plaintiff] showed increasing deterioration in his ability to maintain focus and concentration, interact normally with other people, and essentially outside of his job seemed to have severe dysfunction to his social interactions and ability to maintain his activities of daily living.

*Id.* Dr. Herz further wrote that he did not remember a diagnosis of Plaintiff's anxiety disorder, but he did recall "severe dysfunction in his abilities to interact socially with other people." *Id.* Dr. Herz also remarked that Plaintiff had marked difficulties in focus and concentration to the point where Dr. Herz believed that Plaintiff might have a diagnosis of ADD but that he "never was able to spend enough time subsequently with him to draw any conclusions about that possibility." *Id.*

The ALJ gave Dr. Herz's letters little weight because they were inconsistent with his own treatment notes. Tr. 20. The ALJ explained:

> For example, contrary to the level of severity implicated in the first letter, during the course of treatment in 2012, Dr. Herz noted the "possibility" that the claimant was significantly impaired, but that there was no evidence at that point to certify for the requisite duration. [Tr. 272–73]. Moreover, increased symptoms occurred in large part, if not entirely, due to lack of treatment, not in spite of it. As discussed above, when the claimant had the financial means for medication management, symptoms improvement. Also, Dr. Herz's failure to account for the claimant's admitted meth abuse renders this opinion less persuasive. After hearing the claimant's substance abuse, Dr. Herz state that "this does make sense out of some of his unusual past functioning issues" [Tr. 338].

*Id.* Regarding Dr. Herz's treatment notes dated August 2, 2012, the last time that Dr. Herz had seen Plaintiff, he stated that "[a]t this point I think it is unlikely he could get [disability benefits] even though there is a possibility that he is significantly impaired." Tr. 272. In those treatment notes, he also wrote that Plaintiff's physical appearance looked better, he was less depressed, his attention was somewhat more focused, and his GAF score was slightly improved at 48. Tr. 272–73.

The Court agrees with the ALJ that Dr. Herz's assessment of Plaintiff contained in his treatment notes is inconsistent with the level of function described in both of his subsequent letters. It is a specific and legitimate reason to discredit a physician's opinion where that opinion is inconsistent with the physician's own treatment notes. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). In his letters, Dr. Herz stated that he had not seen Plaintiff since his August 2012 visit and that he had not received Plaintiff's medical records. In other words, there was no information available to Dr. Herz upon which to opine that Plaintiff's condition had deteriorated since his last contact with Plaintiff.

Moreover, Dr. Herz's omission of Plaintiff's methamphetamine abuse (which Plaintiff later claimed that he made up) severely undercuts the weight of his letters. Dr. Herz remarked on Plaintiff's purported meth abuse in his treatment notes but omitted it entirely from both of his letters. Dr. Herz's failure to discuss Plaintiff's methamphetamine abuse in his letters is a specific and legitimate reason for according them little weight. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (upholding the ALJ's determination that a "lack of candor" can be inferred from the claimant's inconsistent statements about her marijuana use which "carries over to her description of physical pain"); *see also Hardwick v. Astrue*, 782 F. Supp. 2d 1170, 1179–80 (E.D. Wash. 2011) (citing *Lingenfelter*, 504 F.3d at 1044–45) (holding that a doctor's failure to diagnose or factor in evidence of the claimant's substance abuse constituted a specific and legitimate reason for disregarding his opinion); *Roy v. Colvin*, No. 14-35162, 656 Fed. Appx. 816, 818 (9th Cir. 2016) (holding that the ALJ properly rejected the opinions of the claimant's therapists because they did not sufficiently account for his drug abuse).

### B. Dr. Whitehead

Dr. Whitehead, an examining source, conducted a mental evaluation of Plaintiff in December 2012. Tr. 245–49. She gave Plaintiff a Global Assessment of Functioning ("GAF") score of 52 and opined that "working alone doing repairs is more suitable" for Plaintiff given his irritability with the public. Tr. 19–20, 248. She also opined that Plaintiff "may be able to work part time to decrease job stress." Tr. 248. The ALJ found that Dr. Whitehead's GAF score was persuasive because it was consistent with her contemporaneous mental evaluation of Plaintiff. Accordingly, the ALJ gave that part of the opinion great weight. Tr. 20. By contrast, the ALJ accorded little weight to Dr. Whitehead's remark that Plaintiff may be able to work part time to decrease job stress because she used equivocal language. *Id.* The ALJ also found that diminished

job stress was adequately accounted for in his RFC finding limiting Plaintiff to simple work with social restrictions. *Id.*

An ALJ is "not required to incorporate limitations phrased equivocally into the RFC." *Collum v. Colvin*, No. 6:13-cv-01173-AA, 2014 WL 3778312, *4 (D. Or. July 30, 2014) (citing *Valentine*, 574 F.3d at 691–92). For example, an ALJ may reject function limitations prefaced with language such as "might," "may," or "would also likely require." *Id.* (citing *Glosenger v. Comm'r Soc. Sec. Admin*, No. 3:12-cv-1773-ST, 2014 WL 1513995, *6 (Apr. 16, 2014)). Statements including such language may be excluded by an ALJ because they are not diagnoses or descriptions of a plaintiff's functional capacity. *See Valentine*, 574 F.3d at 691–92 (upholding the ALJ's rejection of an equivocal medical observation because it was "neither a diagnosis nor a statement of [the plaintiff's] functional capacity" and finding that it was "rather a recommended way for [the plaintiff] to cope with his PTSD symptoms").

In this case, the ALJ accorded great weight to Dr. Whitehead's opinion to the extent that it was consistent with objective medical evidence in the record and her own contemporaneous mental health examination of Plaintiff. The ALJ accorded little weight, however, Dr. Whitehead's statement that plaintiff "*may be able to* work part time to decrease job stress." Tr. 20, 248 (emphasis added). The Court agrees that this language was equivocal and did not describe Plaintiff's functional capacity such that the ALJ was required to incorporate it into the RFC. Dr. Whitehead's statement that Plaintiff "may be able to work part time to decrease job stress" merely describes a recommended method for Plaintiff to cope with his bipolar disorder. Accordingly, the ALJ did not err by rejecting this statement from Plaintiff's RFC. Furthermore, the ALJ accounted for diminished job stress in the RFC by limiting Plaintiff to simple work with

"no more than occasional interaction with supervisors, no contact with the general public, and at most, brief infrequent contact with coworkers." Tr. 17.[2]

## CONCLUSION

Based on the foregoing, the Commissioner's decision is affirmed and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 10 day of May, 2017

_Marco Hernández_
MARCO A. HERNÁNDEZ
United States District Judge

---

[2] Plaintiff's single-sentence assertion tacked on to the end of his brief that the ALJ improperly rejected the lay testimony of his mother-in-law was insufficient to preserve the issue. *See Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (declining to manufacture arguments on a party's behalf and holding that a bare assertion to not preserve a claim).